# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

|  |  |
|---|---|
| DOLORES MARTINEZ and LORALIE NOLET, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MERCHANTS & MEDICAL CREDIT CORPORATION, INC.,<br><br>Defendant. | Case No.: 18-cv-485<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Dolores Martinez is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff Loralie Nolet is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.      Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

6.     Each Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes, namely a personal consumer credit card account.

7.     Defendant Merchants & Medical Credit Corporation ("Merchants") is a foreign corporation with its primary offices located at 6324 Taylor Drive, Flint, Michigan 48507.

8.     Merchants is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9.     Merchants is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

10.     Merchants is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

11.     Merchants is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Martinez Letter*

12.     On or about May 3, 2017, Merchants mailed a debt collection letter to Plaintiff Martinez regarding an alleged debt, allegedly owed to: "Capital One, N.A." ("Capital One").  A copy of this letter is attached to this complaint as Exhibit A.

13.     Upon information and belief, Exhibit A is a form letter, generated by computer and with information specific to Martinez inserted by computer.

14.     Upon information and belief, Exhibit A is a form debt collection letter, used by Merchants to attempt to collect alleged debts.

15.     Upon information and belief, Exhibit A is the first written communication Merchants mailed Martinez regarding the alleged debt referenced in Exhibit A.

2

16. Exhibit A contains the following:

**NOTICE OF AMOUNT DUE**

STATEMENT DATE:      May 3  2017
ACCOUNT NUMBER:   ■415

**AMOUNT DUE:**     $617.95

CREDITOR: CAPITAL ONE, N.A.
ORIGINAL CREDITOR: CAPITAL ONE, N.A.
RE: YOUR KOHL'S CREDIT CARD ACCOUNT
      *******4352

Exhibit A.

17. Exhibit A states that both the "Creditor" and the "Original Creditor" of the debt is Capital One.

18. The alleged debt referred to in Exhibit A is a Kohl's store-branded credit card account, allegedly owed to Capital One.

19. Martinez opened and used her Kohl's credit card account for personal, family, or household purposes, specifically, purchases of household goods at Kohl's department stores. https://credit.kohls.com/eCustService/#.

### *Nolet Letter*

20. On or about April 7, 2017, Merchants mailed a debt collection letter to Plaintiff Nolet regarding an alleged debt, allegedly owed to: Capital One.  A copy of this letter is attached to this complaint as Exhibit B.

21. Upon information and belief, Exhibit B is a form letter, generated by computer and with information specific to Nolet inserted by computer.

22. Upon information and belief, Exhibit B is a form debt collection letter, used by Merchants to attempt to collect alleged debts.

23. Upon information and belief, Exhibit B is the first written communication Merchants mailed Nolet regarding the alleged debt referenced in Exhibit B.

24. Exhibit B contains the following:

3

**NOTICE OF AMOUNT DUE**

STATEMENT DATE:    April 7 2017
ACCOUNT NUMBER:    █751

**AMOUNT DUE:**    $1,613.50

CREDITOR: CAPITAL ONE, N.A.
ORIGINAL CREDITOR: KOHL'S DEPARTMENT STORES, INC.
RE: YOUR KOHL'S CREDIT CARD ACCOUNT
       *******3252

Exhibit B.

25.     Exhibit B states that the "Creditor" of the debt is Capital One, and that the "Original Creditor" of the debt is Kohl's.

26.     The alleged debt referred to in Exhibit A is also a Kohl's store-branded credit card account, allegedly owed to Capital One.

27.     Nolet opened and used her Kohl's credit card account for personal, family, or household purposes, specifically, purchases of household goods at Kohl's department stores. https://credit.kohls.com/eCustService/#.

### *FDCPA Violations*

28.     Exhibits A and B each contains the following text:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume the debt is valid. If the consumer notifies the debt collector or collection agency in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector or collection agency will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector or collection agency. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

29.     15 U.S.C. § 1692g(a) requires a debt collector to send a notice with the first written communication with the consumer (the "validation notice"). The validation notice must contain:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the

4

consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

30.    The Seventh Circuit has held that the debt collector must provide the validation notice and "state it clearly enough that the recipient is likely to understand it." *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004); *citing Bartlett v. Heibl*, 128 F.3d 497, 500-01 (7th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996).

31.    The debt validation notice provided by <u>Exhibits A and B</u> is misleading and confusing to the unsophisticated consumer.

32.    The parts of the validation notice in <u>Exhibits A and B</u> that disclose the consumer's rights pursuant to 15 U.S.C. §§ 1692g(a)(3) and 1692g(a)(5) inform the consumer that she should notify "this office," whereas the part of the validation notice that discloses the consumer's right to obtain verification of the debt pursuant to 15 U.S.C. § 1692g(a)(4), informs the consumer that she should notify "the debt collector or collection agency."

5

33. Merchants' use of different terms – "the debt collector or collections agency" – in one sentence while using the term "this office" in the others, implies that written disputes should not be directed to "this office," *i.e.,* Merchants.

34. The apparent contradiction inherent in Merchants' instruction that consumers should direct written requests for the name and address of the original creditor to "this office" but written disputes to the "debt collector or collection agency," is confusing and deceptive on its face. *Francisco v. Doctors & Merchants Credit Serv.*, 1998 U.S. Dist. LEXIS 12234, at *21 (N.D. Ill. July 29, 1998):

> *Apparent* contradictions of validation notices are analogous to literally false statements in trademark law, in the limited sense that they are thought to cause confusion by their very nature; in other words, apparent contradictions are thought to evidence per se 'confusingness,' to borrow Judge Posner's phrase. Consequently, courts may determine whether an alleged contradiction of a validation notice violates § 1692g without reference to evidence of actual consumer confusion.

35. For purposes of Plaintiffs' claims under 15 U.S.C. §§ 1692e and 1692e(10), Defendant's language is a material violation of the FDCPA. A consumer who is confused by the validation notice will not understand how to effectively invoke his or her rights under 15 U.S.C. § 1692g(b):

> (b) **Disputed debts**
>
> If the consumer notifies the debt collector *in writing* within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector *in writing* that the debt, or any portion of the debt, is disputed or

6

that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(emphasis added).

36.     The unsophisticated consumer would be confused by Exhibits A and B.  It is not uncommon for multiple debt collectors, over time, to contact a consumer about the same alleged debt, and each debt collector is required to provide the validation notice and comply with the verification provisions of 15 U.S.C. § 1692g.  *See, e.g., Sanchez v. Jackson*, 2016 U.S. Dist. LEXIS 160776, at \*16 (N.D. Ill. Nov. 21, 2016) ("this Court adopts the interpretation of § 1692g found in the *Janetos* line of cases and finds that § 1692g applies to the initial communication made in connection with the collection of a debt by each successive debt collector."); *see also Francis v. Snyder*, 389 F. Supp. 2d 1034, 1040 n.2 (N.D. Ill. Sept. 30, 2005); *Stair v. Thomas & Cook*, 254 F.R.D. 191, 199 (D.N.J. Sept. 23, 2008); *Griswold v. J & R Anderson Bus. Servs.*, 1983 U.S. Dist. LEXIS 20365, at \*2-3 (D. Ore.  Oct. 21, 1983).

37.     A consumer that received a letter in the form of Exhibit A or Exhibit B, who had previously received a debt collection letter from another debt collector attempting to collect on the same account would understand the instruction to send a written dispute to "the debt collector or collection agency," would be confused and misled to believe she should mail her written dispute to the initial "debt collector or collection agency" rather than "this office."

38.     Upon information and belief, Merchants often sends its initial written communication to consumers after other debt collectors have already attempted to collect on the same Kohl's accounts.  For example, on December 15, 2016, non-party debt collector, Mercantile Adjustment Bureau, LLC ("Mercantile"), mailed Nolet a debt collection letter that

referenced this same Kohl's account. A copy of this letter is attached to this complaint as Exhibit C.

39. Moreover, the relationship between Kohl's and Capital One, *i.e.*, that Capital One is the card issuer but Kohl's services the accounts, renders Exhibits A and B confusing to the consumer, whether or not she has received letters from other third-party debt collectors.

40. In Exhibit A, Merchants further exacerbates this confusion by informing the consumer that she should contact "this office [to obtain] the name and address of the original creditor, if different from the current creditor," Exhibit A; *see* 15 U.S.C. § 1692g(a)(5), and informing the consumer that original creditor and the current creditor are the same entity. The unsophisticated consumer would understand that she did not need to direct any written dispute to "this office" because the original creditor is not different from the current creditor.

41. Merchants further exacerbates the confusion by inaccurately truncating consumers' account numbers.

42. Exhibit A states that Martinez' Kohl's credit card account number is ******4352, but her actual account number ends in 5-343. A copy of an account statement Kohl's mailed to Martinez on or about January 13, 2017 is attached to this complaint as Exhibit D.

43. Likewise, Exhibit B states that Nolet's Kohl's credit card account number is ******3252, but her actual account number ends in 6-132. A copy of an account statement Kohl's mailed to Nolet on or about February 8, 2017 is attached to this complaint as Exhibit E.

44. Upon information and belief, the account number that Kohl's, or Capital One, provides to debt collectors at the time consumers' accounts are assigned for collection purposes is accurate. For example, Exhibit C, mailed by Mercantile, accurately states that Nolet's account number ends in 6-132.

45.     Upon information and belief, Merchants appends "52" to consumers' accounts whenever Merchants attempts to collect a Kohl's debt as a matter of course. The unsophisticated consumer does not know, and is not expected to know, that Merchants appends "52" to consumers' accounts.

46.     By providing an account number that appears to be different from the account number providing by the creditor, Exhibits A and B are confusing and misleading as to the account that Merchants is attempting to collect. *See Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1119 n.6 (9th Cir. 2014) (observing that a debt collector could potentially materially mislead the consumer by providing an incorrect and unrecognizable account number), *amended in part by Tourgeman v. Collins Fin. Servs.*, 2014 U.S. App. LEXIS 20882 (9th Cir. 2014).

47.     Moreover, Exhibit B also states that the original creditor is Kohl's but the current creditor is Capital One.  The unsophisticated consumer knows that debts---particularly debts that are in default---are assignable.  The representation that the original creditor was Kohl's and that the current creditor is Capital One misleads the consumer to believe that the debt has been assigned when it has not, which materially confuses and misleads the unsophisticated consumer about the legal status of the debt. *Tourgeman*, 755 F.3d at 1119 n.6 ("misidentification of the original creditor independently sufficient to constitute a violation of the Act."), *amended in part by Tourgeman*, 2014 U.S. App. LEXIS 20882 (9th Cir. 2014).

48.     This confusion is exacerbated by Merchants' failure to provide the correct account number, which signals to the consumer that the account was assigned a new account number at the time Capital One purchased it.  *See Mennes v. Capital One, N.A.*, 2014 U.S. Dist. LEXIS 61729, at *7-8 (W.D. Wis. May 5, 2014) (discussing Capital One purchasing and attempting to collect defaulted debts).

9

49. The confusing and misleading representations as to whether the account has been assigned are material false statements about the character of the account. *E.g., Hepsen v. J.C. Christensen & Assocs.*, 2009 U.S. Dist. LEXIS 92717, at *14 (M.D. Fla. Sept. 22, 2009), *aff'd by Hepsen v. Resurgent Capital Servs., LP*, 383 Fed. Appx. 877 (11th Cir. 2010).

50. The representation that an account has been assigned is a material false statement because it confuses and intimidates debtors about how the debt is being reported to consumer reporting agencies, and confuses them about who to pay. *See Banneck v. HSBC Bank USA, N.A.*, 2016 U.S. Dist. LEXIS 79980, at *21-23 (N.D. Calif. June 20, 2016) (discussing the reporting of consumer debts in cases of sale to a third-party debt buyer); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016).

51. Martinez was confused and misled by Exhibit A.

52. The unsophisticated consumer would be confused by Exhibit A.

53. Nolet was confused and misled by Exhibit B.

54. The unsophisticated consumer would be confused and misled by Exhibit B.

### The FDCPA

55. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA

10

sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin.
LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority
in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a
primary purpose of the FDCPA is to protect consumers from receiving false and misleading
information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind.
Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized
and affirmed the power of Congress to pass legislation creating new rights, which if violated,
would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye
Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H
Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017)
("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to
standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016
U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017
U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA,
Congress established 'an enforceable right to truthful information concerning' debt collection
practices, a decision that 'was undoubtedly influenced by congressional awareness that the
intentional provision of misinformation' related to such practices, 'contribute[s] to the number of
personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual
privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS
107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon
alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446,
2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is
violated, and especially when Congress has created a cause of action for its violation, by

definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

56.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

57.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

58.     15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

59.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt.

60.     15 U.S.C. § 1692g(a) states, in part:

(a) **Notice of debt; contents**
Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

. . .

(2) the name of the creditor to whom the debt is owed;

. . .

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

(b) **Disputed debts**

. . .

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

61.    The 15 U.S.C. § 1692g(b) prohibition on communications that "overshadow" or are "inconsistent" with the disclosure of the consumer's right to dispute the debt treats "an apparent though not actual contradiction" as though it was "as bad as an outright contradiction." *Bartlett v. Heibl*, 128 F.3d 497, 500-01 (7th Cir. 1997).

62.    15 U.S.C. § 1692f prohibits "any unfair or unconscionable means to collect or attempt to collect any debt."

*The WCA*

63.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

64.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

65.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

66.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).  Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

67.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

68.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and

injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

69.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

70.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

71.     Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

72.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

73.     The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited."); *see also Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. Jan. 22, 2008) (misleading consumers into delaying the transmission of the consumer's written request for

15

verifying documentation, thereby causing the loss of valuable consumer rights, violated state statute forbidding harassing, abusive, misleading, and unfair debt collection practices).

## COUNT I – FDCPA

74.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

75.     The language in Merchants' letters is false, misleading, and confusing to the unsophisticated consumer, in that the language contained in the validation notice refers to the debt collector in terms that would lead the unsophisticated consumer to be uncertain as to what party to contact to dispute or seek verification of the debt.

76.     Defendant did not provide a clear FDCPA validation notice as required by 15 U.S.C. § 1692g(a).

77.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692g(a), 1692g(a)(4), and 1692g(a)(5).

## COUNT II – FDCPA

78.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

79.     Exhibits A and B contain false, deceptive, misleading, and confusing statements about the name of the account's character and legal status, and about the name of the current and former creditor.

80.     By providing the wrong creditor account number, Exhibits A and B are misleading as to which accounts Merchants collection letters are directed.

16

81. By providing the wrong creditor account number, along with the wrong original creditor name, Exhibit B is misleading as to whether the account has actually been assigned from Kohl's to Capital One.

82. Defendant violated 15 U.S.C. §§ 1692e(2)(a), 1692e, 1692e(10), and 1692g(a)(2).

### COUNT III – WCA

83. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

84. Merchants is licensed as a Collection Agency pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

85. Exhibits A and B contain false, deceptive, misleading, and confusing representations, and ineffectively disclose the consumer's statutory validation rights.

86. Exhibits A and B contain false, deceptive, misleading, and confusing representations as to the name of the creditor, and the character and legal status of the debt.

87. Exhibits A and B violate the FDCPA.

88. Defendant violated Wis. Stat. § 427.104(1)(g) and 427.104(1)(h).

### CLASS ALLEGATIONS

89. Plaintiffs bring this action on behalf of two Classes.

90. Class I ("Same Original Creditor Class"), consists of:

> (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form of Exhibit A to the complaint in this action, (c) instructing the consumer to direct written disputes to "the debt collector or collection agency," (d) and informing the consumer that the original creditor and the current creditor are the same entity, (e) where Merchants was attempting to collect a debt for personal, family, or household purposes, (f) and the letter in the form of Exhibit A was mailed between March 27, 2017 and March 27, 2018, inclusive, (g) and was not returned by the postal service.

17

Martinez is the named representative for Class I.

91.     Class II ("Different Original Creditor Class"), consists of:

> (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form of Exhibit B to the complaint in this action, (c) instructing the consumer to direct written disputes to "the debt collector or collection agency," (d) and informing the consumer that the original creditor and the current creditor were different entities, (e) where Merchants was attempting to collect a debt for personal, family, or household purposes, (f) and the letter in the form of Exhibit B was mailed between March 27, 2017 and March 27, 2018, inclusive, (g) and was not returned by the postal service.

Nolet is the named representative for Class II.

92.     Each Class is so numerous that joinder is impracticable.  On information and belief, there are more than 50 members of each Class.

93.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

94.     Plaintiffs' claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

95.     Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

96.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

97.     Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(b)     actual damages;

(c)     statutory damages;

(d)     attorneys' fees, litigation expenses and costs of suit; and

(e)     such other or further relief as the Court deems proper.

Dated:  March 27, 2018

**ADEMI & O'REILLY, LLP**

By:     /s/ Mark A. Eldridge
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com
